UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL F. WILLIAMS,

                Plaintiff,

v.                                    Case No. 23-cv-1477-pp

WILLIE GRISBY and DENARRIS WHITE,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19) AND DISMISSING CASE**

      Plaintiff Darnell F. Williams, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed this case alleging that the defendants violated his constitutional rights when he was confined at the Milwaukee County Jail. The court screened the complaint and allowed the plaintiff to proceed on an excessive force claim against the defendants. Dkt. No. 14 at 1-2. On October 28, 2024, the defendants filed a motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 19. This order grants the defendants' motion and dismisses the case without prejudice.

**I.    Facts[1]**

      During the events described in the complaint, the defendants were employed by the Milwaukee County Sheriff's Office as corrections officers and worked in the Milwaukee County Jail. Dkt. No. 20 at ¶1. The plaintiff was an

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

occupant at the jail, where he was housed in units that included the infirmary, 4B, 3A, 4D and 6C until he was transferred into the custody of Wisconsin Department of Corrections on October 27, 2023. Id. at ¶¶2, 4.

The plaintiff alleges that on September 29, 2023, defendant Grisby aggressively placed a restraint belt on him. Id. at ¶5. He alleges that Grisby pulled the belt aggressively and that White also pulled the restraint belt as hard as he could, causing the plaintiff "bodily harm blood everywhere on my arms." Id.

    A.    The Jail's Grievance Procedure

At the jail, the administrative process for addressing occupant complaints is the occupant Grievance Procedure. Id. at ¶6. At all times relevant to the plaintiff's complaint, jail occupants could make formal complaints regarding jail staff behavior or any other issue related to that occupant's health, welfare, facility operation or occupant services by submitting a grievance through the jail's grievance procedure. Id. at ¶7. The grievance procedure at the jail was described in detail in the Milwaukee County Jail Occupant Handbook. Id. at ¶8. Since July 2020, the handbook has been uploaded to the jail's electronic kiosk system and made accessible to occupants at any time they are present in the dayroom of their respective housing units. Id.

Every time an occupant accesses the jail's kiosk system, he or she is required to acknowledge receipt of the Occupant Handbook. Id. at ¶9. At all times relevant to the plaintiff's complaint, all jail occupants had access to the

handbook and the jail's grievance procedure through the kiosk. Id. at ¶10. In September 2023, when the plaintiff was booked into the jail, the grievance procedure was explained in detail in a video that played on a continuous loop in the booking room at the Milwaukee County Criminal Justice Facility. Id. at ¶11.

The electronic kiosks, located in every housing unit, permit a jail occupant to submit grievances, grievance appeals and final appeals to responses related to those occupant grievances. Id. at ¶12. The occupant is responsible for reviewing the response to his grievance, grievance appeal and final appeal, and may do so by signing into his occupant account on any kiosk throughout the jail. Id. at ¶13. To aid in a thorough understanding of the grievance procedure, jail staff are trained to assist occupants who ask them for help in submitting grievances. Id. at ¶14. Jail occupants also are instructed by the grievance procedure in the Occupant Handbook to request assistance from staff if they have difficulty submitting grievances. Id.

Once an occupant submits a grievance on the electronic kiosk, the grievance is assigned a number that cannot be removed or deleted from the system. Id. at ¶15. Occupant grievances related to complaints against jail staff are reviewed by a member of the jail's special projects unit, who then assigns the grievance to the appropriate floor supervisor on duty on the date and time the alleged complaint occurred. Id. at ¶16. After the floor supervisor provides a response to the grievance, it is reviewed by the special projects unit supervisor or a designee to ensure that the response is appropriate and addresses the

complaint. Id. Once approved, the response to the grievance is made available to the occupant to review on a kiosk. Id.

If the occupant is dissatisfied with the grievance response, he may appeal. Id. at ¶17. The Occupant Handbook instructs occupants to submit their appeals with supporting documents and the full names of witnesses. Id. Once the appeal is received, it is assigned to the shift commander at the time of the initial complaint to provide the response. Id. at ¶18. After the shift commander enters his or her response in the grievance system, the special projects supervisor reviews and approves it. Id. Once approved, the occupant may review the response on the kiosks. Id.

The shift commander's response can be appealed a step further to the jail commander or a designee. Id. at ¶19. This is the final appeal, and it requires that the occupant include all prior written submissions, supporting testimony and evidence, and any newfound information/evidence. Id. The jail commander's (or designee's) response is final and cannot be appealed. Id. The jail's grievance procedure is exhausted after the jail commander's response. Id.

In the event the housing unit kiosks were not available to jail occupants for any reason, occupants could file grievances and appeals by requesting and completing handwritten paper grievance forms and submitting them to jail staff, or by hand delivering them to a jail staff member who would route the grievance to the special projects unit. Id. at ¶20. Any paper grievance submitted by a jail occupant was entered into the electronic system by a special projects unit member, assigned a number and could not be removed or

4

deleted from the system. Id. If an occupant submitted a grievance and/or appeal on a paper form, and did not have access to the kiosk, the responses to the grievance and/or appeal would be printed and delivered to the occupant— either personally, if the occupant was in the jail's custody, or via U.S. mail if the occupant had been released from jail custody. Id. at ¶21.

The Occupant Handbook in effect in September 2023 included the grievance procedure instructions. Id. at ¶22. The handbook was uploaded to the jail's kiosk and made accessible to jail occupants at any time they were present in the dayroom of their respective housing units at the jail. Id.

The grievance procedure in operation at the jail in September 2023 read as follows:

> GRIEVANCES
> If you feel you are being treated unjustly or unfairly you may file a grievance. A grievance must:
> • Address an issue personally affecting an occupant in the area of health, welfare, facility operation or occupant services
> • Address a complaint of oppression or misconduct by an employee
> • You should file a grievance only after you have addressed the problem with the pod officer and are not satisfied with the result.
> • A grievance should be filed by an occupant within 14 days of the complaint or issue.
> • An occupant may appeal the findings within 3 days of receiving the finding of a grievance to a Jail shift commander by submitting in writing any supporting documentation, including full names of witnesses.
> • Occupants may appeal to the Jail Commander or the authorized designee as the final level of appeal within 3 days of receiving the findings of the first appeal of the original grievance.
>
> Grievance procedure:
> 1. Complete grievance in the Kiosk. If you need help, ask the officer, or request the assistance of an advocate.
> 2. The grievance will be reviewed and answered by a Jail Representative.

5

> 3. If you are dissatisfied with the result, you may appeal the decision by writing supporting documentation including full names of witnesses. The appealing Jail Representative will review and rule on your appeal.
> 4. Once the appealing representative has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new-found information/evidence. This decision/action is final.

Id. at ¶22, Exh. 1000 at p. 3.

    B.    <u>Plaintiff's Grievances</u>

At all times relevant to the allegations contained in the plaintiff's complaint, the jail's grievance procedure was always in full operation and the plaintiff had access to this procedure, as well as the kiosk. Dkt. No. 20 at ¶25. The jail stores all occupant grievances and grievance responses, initial and final appeals and responses to those appeals throughout the duration of an occupant's incarceration. Id. at ¶26.

From September 20, 2023 through October 26, 2023, the plaintiff submitted fourteen grievances through the kiosk system. Id. at ¶29. He submitted three grievances/requests that mention the incident he alleges in his complaint in this case. Id. at ¶30.

On October 1, 2023, the plaintiff submitted Grievance No. 119433, which stated as follows:

> On 9-29-23 I was A**aulted by co Grisby an officer white they caused me bodily harm I needed medical attention an[d] pictures w[]ere took an[d] I have to get xray an[d] I want to press charges on both officers I also request from public record an[d] jail record of the pictures of the injury they cause they are in violation of 302.08 an[d] staff misconduct.

6

Id. at ¶31. On October 11, 2023, Lieutenant Dingman responded to this grievance as follows:[2]

> Video review shows you pull your hands away from staff, causing the injury to yourself. You already have a separate request open for the pictures.

Id. at ¶32; Dkt. No. 22-2 at 3. The plaintiff did not appeal the response. Dkt. No. 20 at ¶33.

On October 13, 2023, the plaintiff submitted Grievance No. 120252, which stated as follows: "I never pulled my hands when co Grisby an[d] co white A**aulted me on 09-29-2023." Id. at ¶34. On October 16, 2023, Lieutenant Dingman responded to the grievance as follows: "You were viewed on camera pulling your hands away." Id. at ¶35. The plaintiff did not appeal the response he received to Grievance No. 120252. Id. at ¶36.

On October 13, 2023, the plaintiff submitted Grievance No. 120256, in which he requested a copy of the report for the September 29, 2023 incident. Id. at ¶37. On October 14, 2023, Sergeant Lauren Pachmayer responded to the plaintiff's grievance, as follows: "You can receive a copy of the report however, there is a 15 cent per page charge. Please respond to this request stating that you accept all charges." Id. at ¶38. That same day, the plaintiff appealed Grievance No. 120256, stating as follows:

> The report shows clearly co Grisby lied it didn't happen on September 9 2023 I wasn't even in jail an[d] I want that camera footage and I never threatened the co Grisby or co white I don't even talk like that I would never engage in disrespect to a staff I never

---

[2] The defendants incorrectly state that Lieutenant Dingman responded on October 9, 2023. Dkt. No. 20 at ¶32. The Grievance shows that Lieutenant Dingman responded on October 11, 2023. Dkt. No. 22-2 at 3.

7

> received a ticket for that an[d] co Grisby an[d] co White never gave me medical attention or psw co Williams did and it was not a small laceration pictures was took an[d] Lt Alexander didn't place me on ad seg Lt Spidell did before this incident the report is lies [sic]. An[d] I want a copy of my response an[d] y'all I'll cover the fee.

Id. On October 16, 2023, Lieutenant Dingman responded to the plaintiff's Appeal for Grievance No. 120256, stating:

> Your request for camera footage is denied, based on the fact that you are in custody and that poses a security risk. You were seen by Nursing staff the day of this incident.

Id. at ¶40. The plaintiff did not submit an appeal to the jail commander or his or her designee. Id. at ¶41.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

8

> or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.   Discussion

The defendants contend that the court must dismiss this case because the plaintiff failed to fully appeal any of the three grievances he submitted. Dkt. No. 21 at 8. According to the defendants, the plaintiff did not submit appeals regarding his first two grievances, and his third grievance, although mentioning the incident, was a request for copies of video and reports and cannot be reasonably argued to exhaust his administrative remedies regarding the incident. Id. at 10.

The plaintiff responds that he exhausted his administrative remedies regarding his excessive force claim. Dkt. No. 27 at 1. He states that he filed multiple grievances and properly appealed the responses, thereby exhausting his available remedies. Id. The plaintiff says that he tried to appeal everything but that "it said (closed) and they wouldn't let me." Id. at 2. He states that he kept filing because they would close it and "you can't do nothing then[.]" Id. The plaintiff says, "It's not fair to me that they have the kiosk is what they

9

stated talking about appeal, which I did and the argument is not about the appeal it's about them harming me which is wrong and they justified it by saying I did[n't] exhau[s]t my remedies." Id. The plaintiff reiterates, "[o]nce they close it you can't respond so my appeal was a new grievance they would purposefully close it." Id. The plaintiff states that he attached a copy of "[his] response every time." Id. Attached to the plaintiff's brief are pages six through eight from the defendants' proposed findings of fact. Dkt. No. 27-1 at 1-3.

The defendants reply that the plaintiff's failure to follow the court's rules relating to opposition to a motion for summary judgment should result in the court finding that all the defendants' proposed facts are deemed admitted for the purpose of summary judgment. Dkt. No. 28 at 2. The defendants also contend that even if the court entertains the plaintiff's unsupported arguments, he has not demonstrated that grievance process appeals were unavailable to him. Id. at 3.

The defendants are correct that this court's Local Rules require a party opposing summary judgment to file a concise response to the moving party's statement of facts that contains the moving party's proposed findings of fact followed by a response that includes, in the case of any disagreement, references to supporting materials. Civil Local Rule 56(b)(2)(B) (E.D. Wis.). But district courts are entitled to construe *pro se* submissions leniently and may overlook the plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. See Grady v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016).

In response to the defendants' motion for summary judgment, the plaintiff did not file a declaration or any other materials referred to in Fed. R. Civ. P. 56(c), except for the three pages from the defendants' proposed findings of fact referenced above. The plaintiff has not offered evidence to dispute the defendants' proposed facts. The court deems the defendants' proposed findings of fact undisputed for the purpose of summary judgment. See Civil L.R. 56(b)(4).

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires an incarcerated person to comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and

11

deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Incarcerated individuals need only exhaust "available remedies, not remedies that are unavailable." Jackson v. Esser, 105 F.4th 948, 956-57 (7th Cir. 2024) (quoting Hacker v. Dart, 62 F.4th 1073, 1078 (7th Cir. 2023)). "If administrative remedies are genuinely unavailable or nonexistent because, for example, prison employees failed to respond to properly filed grievances, we consider the prisoner to have satisfied the exhaustion requirement." Id. at 957 (citing Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016)); see also Crouch v. Brown, 27 F.4th 1315, 1322-23 (7th Cir. 2022) (Prison officials may not take unfair advantage of the exhaustion requirement or make a remedy unavailable by failing to respond properly or by affirmative misconduct.).

It is undisputed that the plaintiff filed three grievances in which he referenced the incident upon which he bases his excessive force claim. The plaintiff did not file any appeal of the dismissal of his first two grievances, Nos. 119433 and 120252. He appealed the dismissal of his third grievance once, No. 120256, but he did not appeal the shift commander's response to the jail commander, as the grievance procedure rules require. The plaintiff states that he tried to appeal, but that he couldn't because the grievances were marked "closed." The plaintiff has not properly supported his assertion as required by

12

Fed. R. Civ. P. 56(c). Even if he had, the plaintiff appealed other grievances that had been marked "closed," including Grievance 120256. See Dkt. No. 22-2 at 10. The plaintiff's assertion that he could not appeal a grievance that had been marked closed contradicts the undisputed evidence. The plaintiff has not demonstrated that he was denied the opportunity to appeal any of his grievances alleging misconduct by the defendants.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Jones v. Lamb, 124 F.4th 463, 469 (7th Cir. 2024) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). When faced with an allegation that remedies are unavailable, the court "may still grant summary judgment on exhaustion grounds if it determines that there are no genuine disputes of material fact, and, viewing the facts in the light most favorable to the nonmovant, the defendants satisfied their burden to show that remedies were available to the nonmovant as a matter of law." Jackson v. Esser, 105 F.4th 948, 957 (7th Cir. 2024) (citing Smallwood v. Williams, 59 F.4th 306, 318 (7th Cir. 2023)). The defendants have met their burden of establishing that a grievance procedure was available to the plaintiff. See Smallwood, 59 F.4th at 318-19.

The plaintiff did not exhaust his administrative remedies because he did not complete the exhaustion process for his grievances. See Pozo, 286 F.3d at 1025. The court will grant the defendants' motion for summary judgment and

13

dismiss this case without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

### III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 19.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 1st day of July, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**